**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**DAN RYAN BUILDERS, INC.,**

    Petitioner,

v.                                                                                           **Civil Action No. 3:10-CV-76**
                                                                                          **(BAILEY)**

**NORMAN & ANGELIA NELSON,**

    Respondents.

**MEMORANDUM OPINION AND ORDER**

Currently pending before this Court is the petitioner's Motion to Compel Arbitration [Doc. 25], filed October 27, 2010; Respondent Angelia Nelson's Motion to Dismiss [Doc. 30], filed November 16, 2010; the respondents' Motion to Dismiss for Failure to Join Indispensable Parties [Doc. 31], filed November 16, 2010; and the petitioner's Motion to Strike [Doc. 36], filed December 1, 2010. These motions have been fully briefed and are ripe for decision. The Court has reviewed the record and the motion and, for the reasons set out below, concludes that the petitioner's motion to compel should be **DENIED** and the remaining motions should be **DENIED AS MOOT**.

**BACKGROUND**

**I.**     **Factual History**

This case involves the purchase of a home from, and constructed by, Dan Ryan Builders, Inc. ("DRB"). On May 16, 2008, Norman Nelson and DRB entered into an Agreement of Sale, which includes the following arbitration provision:

1

19. ARBITRATION

(a) Any dispute arising under or pursuant to this Agreement, or in any way related to the Property and/or with respect to any claims arising by virtue of any representations alleged to have been made by [DRB], or any agents and/or employees thereof, (with the exception of "Consumer Products" as defined by the Magnuson-Moss Warranty Federal Trade Commission Improvements Act, 15 U.S.C. Section 2301, et seq. and the regulations promulgated thereunder) shall be settled and finally determined by arbitration and not in a court of law, irrespective of whether or not such claim arises prior to or after Settlement hereunder, pursuant to the Construction Industry Arbitration Rules and the Supplementary Procedures for Residential Construction Disputes of the American Arbitration Association ("AAA") then in effect.

Prior to commencing arbitration, the dispute shall first be mediated in accordance with the Construction Industry Mediation Rules of AAA, or another mediation service designated by [DRB].

The parties hereto specifically acknowledge that they are and shall be bound by arbitration and are barred from initiating any proceeding or action whatsoever in connection with this Agreement.

Notwithstanding anything to the contrary herein contained, in the event You default by failing to settle on the Property within the time required under this Agreement, then [DRB] may either (i) commence an arbitration proceeding under this Section 19, or (ii) bring an action for its damages, including reasonable attorneys' fees, as a result of the default in a court having jurisdiction over the Purchaser. You expressly waive your right to mediation and arbitration in such event.

Each party shall be entitled to full discovery in accordance with the local rules of court in the event that arbitration is invoked under this Section 19.

The provisions of this Section 19 shall survive the execution and delivery of the deed, and shall not be merged therein.

(b) In the event that an action is brought in court under Section 19(a) or for any reason a claim is determined not to be subject to binding arbitration under Section 19(a), then You and [DRB] knowing [sic] and voluntarily waive our rights to a trial by jury in any action, proceeding or counterclaim related to this Agreement or the Property, including such actions, proceedings or counterclaims in which You and [DRB] as well as others are parties.

([Doc. 25-2] at §19).

Despite the above-quoted arbitration clause, Norman and his wife, Angelia Nelson, brought suit in the Circuit Court of Berkeley County, West Virginia, on May 28, 2010. The case seeks damages against DRB for: (1) fraudulently concealing its knowledge of an illegal septic system, previous basement flooding, and substandard concrete; and (2) negligently designing and constructing the septic system, which has resulted in property and bodily injury [Doc. 1-3].

## II. Procedural History

On August 6, 2010, DRB filed a Petition to Compel Arbitration [Doc. 1] in this Court pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.* "Specifically, DRB seeks an Order (1) compelling the [Normans] to submit their claims against DRB to arbitration pursuant to the terms of the parties' written Agreement of Sale; and (2) staying any further judicial proceedings in the state court action they have filed in an effort to avoid their contractual agreement to arbitrate their claims." (Id. at ¶ 1). In support of its Petition, DRB states that "[t]he [Normans] have failed, neglected and refused to arbitrate their claims as required by the express terms of the written Agreement of Sale." (Id. at ¶ 16).

On August 18, 2010, the Nelsons moved to disqualify counsel for DRB as well as counsel's law firm of Bowles, Rice, McDavid, Graff, and Love, PLLC ("Bowles") [Doc. 7]. The Nelsons argued that a contract signed by Mr. Nelson, DRB, and their closing attorney from Bowles prohibits the firm's representation of DRB in its Petition. (Id. at 2-3). This Court referred the motion to Magistrate Judge James E. Seibert who, after briefing and a hearing, granted the motion [Doc. 21]. On October 20, 2010, this Court affirmed the magistrate judge's decision and stayed the matter for thirty (30) days to allow DRB to obtain new counsel [Doc. 23].

On October 27, 2010, new counsel appeared for DRB and filed the instant Motion to Compel Arbitration [Doc. 25] causing the Court to lift its stay [Doc. 26]. In the motion, DRB argues that the four-pronged test for compelling arbitration, as outlined in ***Adkins v. Labor Ready, Inc.***, 303 F.3d 496, 500-01 (4th Cir. 2002), is satisfied so as to cover its dispute with the Normans. (Id. at 6-12). As such, DRB requests that this Court "enforce the arbitration provision and require the Nelson's [sic] to arbitrate the claims asserted and to dismiss or agree to stay the litigation pending in [state court]." (Id. at 13).

In response, the Normans argue that: (1) the arbitration provision is inapplicable to Mrs. Nelson because she did not sign the Agreement of Sale and (2) the arbitration provision is unsupported by consideration and unconscionable because DRB can pursue its claims in court, whereas the Normans must arbitrate their claims. ([Doc. 29] at 6-15). DRB replies that Mrs. Nelson is bound as a third-party beneficiary of the Agreement of Sale, or is at least estopped from arguing otherwise, and that the arbitration provision is neither unsupported by consideration nor unconscionable. ([Doc. 32] at 4-5, 8-11). With regard to consideration, DRB argues that no provision of the Agreement of Sale allows it to "cancel the contract at will, or to opt out of the arbitration if there was a dispute regarding whether it had properly done so." (Id. at 9). As for unconscionability, DRB argues that the Normans have failed to show "gross inadequacy in bargaining power" between the parties. (Id. at 10). In a surreply, the Normans argue that insofar as Mrs. Nelson is not suing to enforce a duty arising from the Agreement of Sale, she is not bound by the arbitration provision as a third-party beneficiary. ([Doc. 33] at 1-2). DRB has since moved to strike the Nelsons' surreply [Doc. 36].

4

On November 16, 2010, Mrs. Nelson moved to dismiss herself as a nonsignatory to the Agreement of Sale [Doc. 30]. In response, DRB restates its arguments from its reply in support of its motion to compel [Doc. 35]. Similarly, Mrs. Nelson incorporates the arguments presented in her surreply [Doc. 37].

Also on November 16, 2010, the Nelsons moved to dismiss the Petition for failure to join indispensable parties, such as the subcontractors against whom DRB has brought third-party claims in the state court action [Doc. 31]. In response, DRB argues that the FFA requires an enforcement of an arbitration clause "notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." ([Doc. 34] at 2).

## **DISCUSSION**

**I.    Federal Arbitration Act**

DRB relies upon the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, in support of their motion to effectively compel arbitration. Specifically, section 2 of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

A party can compel arbitration by establishing: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the defendant to arbitrate the dispute. See **Adkins v. Labor Ready, Inc.**, 303 F.3d 496, 500-01 (4th Cir. 2002).

Generally, "[t]he FAA reflects 'a liberal federal policy favoring arbitration agreements.'" *Adkins,* 303 F.3d at 500 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Indeed, the FAA serves as "a response to hostility of American courts to the enforcement of arbitration agreements, a judicial disposition inherited from then-longstanding English practice." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). Moreover, a court is required to "resolve 'any doubts concerning the scope of arbitrable issues ... in favor of arbitration.'" *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25).

Finally, there is one important caveat to the reach of the FAA. "Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts. *Hill,* 412 F.3d at 543 (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24). For example, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2" of the FAA. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (citations omitted). Challenges to the validity of a contract as a whole must be considered in the first instance by an arbitrator, while challenges to an arbitration clause can be construed by the courts. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006).

## II. Analysis

### A. DRB's Motion to Compel Arbitration

DRB argues that the arbitration clause contained in the Agreement of Sale requires

6

the Nelsons' state court claims to be submitted to arbitration. This argument requires the resolution of two issues, namely: (1) whether the elements for compelling arbitration are satisfied and (2) if so, whether there are any state law defenses to enforcement. *See* **Adkins**, 303 F.3d at 500-01; **Hill,** 412 F.3d at 543.

### 1. DRB has satisfied the elements for compelling arbitration.

As outlined above, a party can compel arbitration by establishing: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the defendant to arbitrate the dispute. *See* **Adkins**, 303 F.3d at 500-01.

In the instant case, there can be no dispute that the first, third, and fourth elements are satisfied. First, there is clearly a dispute between the parties, as evidenced by the Normans' filing of a lawsuit in state court. Second, the contract at issue is related to interstate commerce, as it was formed between citizens of two different states, for construction of a home that was built with materials transported in interstate commerce.[1] Finally, the Normans have refused to arbitrate, which is also evidenced by the filing of the state court action.

---

[1]The question of what constitutes interstate commerce has been broadly interpreted, and the United States Supreme Court has described the FAA's "reach expansively as coinciding with that of the Commerce Clause." **Allied-Bruce Terminix Companies, Inc. v. Dobson**, 513 U.S. 265, 274 (1995). Moreover, "it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce' – that is, 'within the flow of interstate commerce.'" **The Citizens Bank v. Alafabco, Inc.**, 539 U.S. 52, 57 (2003).

DRB has also satisfied the second element, requiring "a written agreement that includes an arbitration provision which purports to cover the dispute." See **Adkins**, 303 F.3d at 500-01. The Agreement of Sale contains a clear, unambiguous, and broad arbitration provision which purports to cover all disputes that might arise between the parties. Specifically, section 19(a) of the Agreement of Sale provides, in pertinent part, that:

> Any dispute arising under or pursuant to this Agreement, or in any way related to the Property and/or with respect to any claims arising by virtue of any representations alleged to have been made by [DRB], or any agents and/or employees thereof . . . shall be settled and finally determined by arbitration and not in a court of law, irrespective of whether or not such claim arises prior to or after Settlement hereunder . . ..

([Doc. 4-2] at §19(a)).

In state court, the Normans have asserted negligence and fraudulent concealment. Each of these claims relates either to the contract itself, to the property, or to the method and manner of the construction of the home obtained by virtue of the contract. As such, the arbitration clause purports to cover the Normans' claims, and thus, DRB has satisfied every element required to compel arbitration. Accordingly, unless the Normans can present a defense to the enforceability of the arbitration clause, this Court will order their claims submitted to arbitration.

### 2. However, the Normans have provided an adequate defense to prevent enforcement of the arbitration clause.

The Normans present two main arguments in an effort to challenge the enforceability of the arbitration clause in question: (1) lack of consideration and (2) unconscionability. Because these are challenges to whether the arbitration clause is a valid contract, the

Court will apply West Virginia law.  See **Hill**, 412 F.3d at 543.

In West Virginia, "no legal contract exists if the minds of the parties are not in agreement with the essential elements or contract 'fundamentals . . . [which include] competent parties, legal subject matter, *valuable consideration and mutual assent.*'" **State ex rel. Saylor v. Wilkes**, 216 W.Va. 766, 775-76, 613 S.E.2d 914, 923-24 (2005) (quoting Syl. Pt. 5, in part, **Virginian Export Coal Co. v. Rowland Land Co.**, 100 W.Va. 559, 131 S.E. 253 (1926)) (emphasis added).  Indeed, "[c]onsideration is . . . an essential element of a contract.  Consideration has been defined as 'some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by another.'  17 Am.Jur.2d, Contracts, Section 85.  A benefit to the promisor is sufficient consideration for a contract.  17 Am.Jur.2d, Contracts, Section 96." **Cook v. Heck's Inc.**, 176 W.Va. 368, 373, 342 S.E.2d 453, 458059 (some citations omitted).

An illusory promise, however, cannot constitute consideration because an illusory promise is not binding on the promisor.  See **Beachler v. Ryan's Family Steak Houses, Inc.**, 2007 WL 2773832, *5 (N.D. W.Va. Sept. 21, 2007) (citing **Hill**, 412 F.3d at 543).  For example, in the arbitration context, a promise to arbitrate would be illusory if the promisor retained the right to unilaterally amend or revoke the arbitration clause at any time.  See **Hill**, 412 F.3d at 543 (citing **Cheek v. United Healthcare of the Mid-Atlantic, Inc.** 378 Md. 139, 149, 835 A.2d 656, 662 (2003)).

In the instant case, the Normans contend that the DRB's promise to arbitrate is less than illusory, as there is no promise on the part of DRB to arbitrate its claims against the

9

Normans at all. Specifically, the Normans argue that the arbitration provision in their Agreement of Sale requires them to arbitrate any claim it may have against DRB, whereas DRB has retained the right to sue the Normans in court. This lack of mutual consideration, the Normans assert, is nearly identical to that relied upon by the Fourth Circuit in *Howard v. King's Crossing, Inc.*, 264 Fed.Appx. 345 (4th Cir. Feb. 19, 2008) to find an arbitration clause unsupported by consideration. This Court agrees.

In *Howard*, the plaintiff brought an action under Maryland law in state court, alleging various contract and tort claims arising from her purchase of a condominium from King's Crossing, Inc. ("King's"). King's and the other defendants removed the case to federal court and moved to dismiss or to stay based on the arbitration clause contained in the condominium's sales agreement. The district court denied the motion, finding that the arbitration clause was unsupported by consideration and unconscionable. The defendants appealed. The Fourth Circuit affirmed by unpublished opinion. *Id.* at 346.

In affirming the district court, the Court in *Howard* focused on the issue of mutual consideration. First, the Court emphasized that the arbitration clause upheld in *Hill* as supported by mutual consideration was one by which "both parties had promised to arbitrate all of their disputes except for a few enumerated exceptions." *Id.* at 347. Then, the Court contrasted the arbitration clause in *Hill* from the one found invalid under Maryland law in *Cheek* because one party held the right to modify or revoke the arbitration agreement, rendering that party's promise illusory. *Id.* Finally, the Court turned to the arbitration clause in King's sales agreement, finding it similarly deficient as the one in *Cheek*:

> In the sales agreement, Howard agreed to arbitrate her disputes against Defendants and to waive any right to proceed in a court of law. Defendants, on the other hand, made no corresponding promise. Rather, they reserved the right to seek specific performance of the agreement in any court of competent jurisdiction and/or to sue Howard for damages. Defendants' "promise" is not merely illusory, it is nonexistent. Under *Cheek*, the arbitration clause clearly fails for want of mutual consideration.

*Id.* Noting that it was unnecessary to reach the question of unconscionability, the Court then affirmed the denial of the defendants' motion to dismiss/stay. *Id.*

Upon careful consideration of the above, this Court finds that the arbitration clause in the Agreement of Sale used by DRB in its transaction with the Normans similarly fails for want of mutual consideration. The arbitration clause begins with an appearance of mutuality:

> (a) Any dispute arising under or pursuant to this Agreement, or in any way related to the Property and/or with respect to any claims arising by virtue of any representations alleged to have been made by [DRB], or any agents and/or employees thereof, . . . shall be settled and finally determined by arbitration and not in a court of law, irrespective of whether or not such claim arises prior to or after Settlement hereunder . . ..

([Doc. 25-2] at §19).

As the clause continues, however, the reader finds that any hope of mutuality can only be described as fleeting, at best:

> Notwithstanding anything to the contrary herein contained, in the event You default by failing to settle on the Property within the time required under this Agreement, then [DRB] may either (i) commence an arbitration proceeding under this Section 19, or (ii) bring an action for its damages, including reasonable attorneys' fees, as a result of the default in a court having jurisdiction over the Purchaser. You expressly waive your right to mediation and arbitration in such event.

(Id.).

Thus, if the Normans wish to pursue a claim against DRB relating to, say, an illegal

11

septic tank, substandard concrete, or any other structural defect of their home, they have no other choice than to arbitrate. On the other hand, if DRB wishes to pursue a claim against the Normans relating to settlement, beyond which this Court can imagine no other claim, DRB may sue the Normans for damages in a court of law. As the Court in **Howard** recognized, DRB's "'promise' [to arbitrate] is not merely illusory, it is nonexistent." **Howard**, 264 Fed.Appx at 347. Therefore, like the arbitration clause in **Howard**, the instant arbitration clause must fail for want of mutual consideration.[2] For this reason, the Court hereby **DENIES** DRB's Motion to Compel Arbitration **[Doc. 25]** and, accordingly, **DISMISSES WITH PREJUDICE** DRB's Petition to Compel Arbitration **[Doc. 1]**.

### B. Parties' Other Motions

In light of the ruling above, this Court finds that the parties' remaining motions **[Docs. 30, 31, & 36]** should be **DENIED AS MOOT**.

## CONCLUSION

For the reasons stated above, this Court finds that the petitioner's Motion to Compel Arbitration **[Doc. 25]** should be, and hereby is, **DENIED**. As such, this Court finds that Respondent Angelia Nelson's Motion to Dismiss **[Doc. 30]**, the respondents' Motion to Dismiss for Failure to Join Indispensable Parties **[Doc. 31]**, and the petitioner's Motion to Strike **[Doc. 36]** should be, and hereby are, **DENIED AS MOOT**. Accordingly, the plaintiff's Petition to Compel Arbitration **[Doc. 1]** is hereby **DISMISSED WITH PREJUDICE** and **ORDERED STRICKEN** from the active docket of this Court.

---

[2]This Court need not reach the question of whether the arbitration clause is unconscionable.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record herein.

**DATED:** December 23, 2010.

*JOHN PRESTON BAILEY*
UNITED STATES DISTRICT JUDGE